**Charles T. BROWN, Appellant,**

**v.**

**Margaret Elliott RICE, Administratrix of the Estate of James V. Rice, Deceased, Appellee.**

Court of Appeals of Kentucky.

Jan. 23, 1970.

As Modified on Denial of Rehearing
May 1, 1970.

James G. Bowman, Hogan, Taylor, Denzer & Bennett, Louisville, for appellant.

C. Alex Rose, Curtis & Rose, Louisville, for appellee.

CULLEN, Commissioner.

The automobile of Charles Brown, while being driven by him southward on Norris Place in Louisville, at around 9:00 p. m. on a night in January, struck and killed James V. Rice, a 61-year-old pedestrian. In this wrongful-death action by Rice's administratrix against Brown the jury returned a verdict for the plaintiff in the amount of $21,657.35, and judgment was entered accordingly. Brown has appealed, arguing that his motions for a directed verdict and for judgment n. o. v. should have been sustained.

The parties have directed their arguments in briefs in this court almost exclusively to the question of whether the evidence created a jury issue as to whether Rice was in a marked crosswalk when he was struck. They seem to take the position that Brown's right to a directed verdict depends upon the answer to the foregoing question. Although the trial court gave a last clear chance instruction the parties do not argue the issue of last clear chance.

The accident happened in the vicinity of the intersection of Norris Place, a north-south street, with Deer Lane, an east-west street. Extending across Norris Place, on the south side of the intersection, there is a marked crosswalk 12 feet 9 inches wide. This is the crosswalk in issue.

Norris Place is 36 feet 3 inches wide, with one northbound lane, one southbound lane, and space on each side for parking. The evidence was that there was a parked car on the east side of Norris Place (on Brown's left) around 30 feet south of the intersection. On the west side of Norris Place, around half a car length south of the intersection, Rice's car was parked.

Rice did not live on Norris Place and the evidence does not indicate what reason he had for being there on the occasion of the accident.

There were no eyewitnesses to the happening of the accident other than Brown. His testimony was that he was driving southward on Norris Place at around 30 miles per hour, with his lights on low beam. As he was "passing through the cross-walk—a car length through the crosswalk" he saw Rice in the street about one car length in front of him. Rice was at a point about four feet west of the center line, "right in front of the left side of my car," and was running toward the west side of the street. Brown had no time to swerve or to sound his horn. He immediately applied his brakes but was unable to stop and the right front of his car struck Rice. Brown's impression was that his car stopped about a car length past the point of impact and that his car did not "carry" Rice any distance. There was very little damage to Brown's car; a broken right headlight and a small dent in the hood.

The accident was investigated by a policeman. His testimony was that there were skid marks in the southbound lane of Norris Place beginning 3 feet 6 inches south of the south line of the crosswalk and extending straight south for a distance of 63 feet 10 inches, terminating under the front wheels of Brown's car where it came to a stop. The right skid mark was 10 feet 10 inches from the right curb and the left skid mark was 1 foot 9 inches from the center line. Rice's body was lying in the street, 6 feet 6 inches from the right curb, at a point 13 feet 10 inches south of Brown's car. One of Rice's shoes was under the front of the car. A wallet-type picture folder was "right at the rear of the car." A clod of dirt was at the rear of the car, next to the rear wheels. The policeman picked up the "parts" of Rice's wristwatch "on the southwest corner of the intersection" where it "was showed to me by one of the people at the scene."

A lady who lived in a house at the southwest corner of the intersection testified that she heard the screeching of brakes and *then*, 10 or 15 seconds later, the sound of a collision. Her testimony has some tendency to refute the appellee's theory that Rice was hit before Brown applied his brakes (Rice being in the crosswalk and Brown not having applied his brakes until he had passed through the crosswalk), but it is of little probative value in view of her obviously inaccurate estimate of the amount of time that elapsed between the screeching of the brakes and what she thought was the sound of a collision.

The appellant's testimony places Rice some 35 to 40 feet south of the south line of the crosswalk when hit. While there are some minor discrepancies in his testimony it is not incredible and it is support-

ed in main part by most of the "physical facts."

Appellee's argument that a jury issue was created as to whether Rice was in the crosswalk when hit rests primarily on a mathematical computation employing the skid marks and estimated "reaction time." The appellee first takes the estimate that Brown, traveling at 30 miles per hour, had a normal reaction time of three-fourths of a second, after he first saw Rice, before he applied his brakes, during which time he traveled 33 feet. This means that Brown was 33 feet north of the point where his brakes were applied when he first saw Rice. The appellee measures back 33 feet from the point where the skid marks began (3½ feet south of the south line of the 12-foot, 9-inch crosswalk) and computes that Brown's car was 16 feet 9 inches north of the north line of the crosswalk when Brown first saw Rice (33 feet minus 16 feet 3 inches). Since Brown said that Rice was about a car length (18 feet) in front of his car when he first saw Rice, the appellee concludes that Rice was in the crosswalk, close to its northern edge, when he was struck.

There is an obvious fallacy in the appellee's computations. It is that the appellee treats the skid marks as having been made solely by the *front* wheels of Brown's car. It is only remotely possible, and not probable, that the marks were so made. The probability is that the first 10 feet of the marks (the car having a 10-foot wheelbase) were made by the back wheels alone. The minimum estimated *overall* length of the car, from *bumper to bumper*, was 18 feet, or 8 feet more than the wheelbase length. If we consider that half of this extra length—four feet—was from the front axle to the front bumper, this means that the distance from the back wheels to the front bumper was 14 feet. So when the brakes were applied the *front* of the car was at least 17½ feet south of the south line of the crosswalk (14 feet from back wheels to front bumper, plus 3½ feet

from south line of cross-walk to point where skid marks began). So, measuring back 33 feet for reaction time, the *front* of the car would have been only 2 feet 9 inches from the north line of the crosswalk when Brown first saw Rice, and if Rice was then a car length (18 feet) in front of Brown's car, Rice was several feet south of the south line of the crosswalk. Obviously, when Brown spoke of Rice's being a car length in front of him, he was referring to the distance from the front of the car, not from the front *axle*.

■ It is plain, we think, that the appellee's theory and computations do not furnish a basis for a finding that Rice was in the crosswalk. In order for appellee to have prevailed on his theory it was incumbent upon him to show measurements, including axle-body car-length measurements, to establish the validity of his mathematical computations. Furthermore, we think the most reasonable interpretation of Brown's testimony is that Rice was a car length ahead *when Brown applied his brakes*— when Brown in his recollection of the event thinks he first saw Rice. This is most consistent with the physical evidences of the accident. It would put Rice around 35 feet south of the south line of the crosswalk, when hit.

■ The appellee argues, secondarily, that the evidence of Rice's watch having been found "on the southwest corner of the intersection" was sufficient to support a finding that Rice was in the crosswalk when struck. We do not agree. The description of the location is loose and could cover an area outside of the crosswalk. The watch very well could have been flung a substantial distance by the force of the impact of the car with Rice's body, and the position of the watch after the accident indicates at the most a possibility, not a probability, that Rice was in the crosswalk when hit. Thus there is a basis only for conjecture, rather than an inference, of the disputed fact. Cf. Klingenfus v. Dunaway, Ky., 402 S.W.2d 844.

It is our conclusion that the evidence would not support a finding that Rice was in the crosswalk when struck. Accordingly, on the basis of the issues argued in this court, Brown was entitled to a directed verdict and to judgment n. o. v. As stated by us at the outset of this opinion, the parties do not argue the issue of last clear chance. We shall say, however, that in our opinion the evidence did not establish that Rice was in the highway, in a position where he should have been seen, for any substantial period of time before Brown saw him. The possibility that he came from the east side of the street from *behind* the car parked there is equally as great as the possibility that he entered upon the street from an unconcealed point. It is only possible, and not probable, that he was in the street long enough to give Brown a clear chance to see and avoid him. Thus there was no proper basis for a finding that Brown had the last clear chance.

The judgment is reversed with directions to enter judgment dismissing the action.

All concur.